IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| TEODORO ESPINOZA, **Plaintiff,** | §<br>§<br>§ | |
| v. | §<br>§ | EP-14-CV-290-DB |
| MEGAN J. BRENNAN, Postmaster General, United States Postal Service, **Defendant.** | §<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Megan J. Brennan's ("Ms. Brennan") "Motion for Summary Judgment" ("Motion"), filed in the above-captioned case on August 11, 2016.    Therein, Ms. Brennan asks the Court to grant summary judgment on all of Plaintiff Teodoro Espinoza's ("Mr. Espinoza") claims.    On September 30, 2016, Mr. Espinoza filed his "Response to Defendant's Motion for Summary Judgment" ("Response").[1]    On October 5, 2016, Ms. Brennan filed her Reply.    After due consideration, the Court finds that Ms. Brennan's Motion should be granted for the reasons that follow.

## BACKGROUND

This is an employment discrimination and retaliation case.    Mr. Espinoza is a Hispanic man with psychological disorders and an employee of the U.S. Postal Service ("USPS"). Mr. Espinoza claims that Ms. Brennan, through her employees at USPS, discriminated against him based on his Hispanic race and national origin and his disability—namely his post-traumatic stress disorder ("PTSD")—and retaliated against him for his protected activity.

Mr. Espinoza is a veteran of the U.S. Marine Corps, U.S. Marine Corps Reserves, and the Texas National Guard.    Def.'s Ex. 1, ECF No. 38-3, at 7; Pl.'s Decl. Teodoro Espinoza ("Ex. 1"), ECF No. 54, ¶ 6, at 42.    He has some disabilities associated with his military service,

---

[1] On September 30, 2016, Mr. Espinoza filed his "Motion for Leave," asking the Court to allow him to untimely file his Response.    The Court granted his Motion for Leave on October 3, 2016.    Therefore, the Court will consider Mr. Espinoza's Response.

for which he has sought treatment through the U.S. Department of Veterans Affairs ("the VA").

Def.'s Ex. 1, ECF No. 38-3, at 8; Pl.'s Ex. 1, ECF No. 54, ¶¶ 6–7, at 42.   Mr. Espinoza claims that

he was diagnosed with PTSD by a doctor at the VA, but he does not know which of the five or six

doctors who treated him diagnosed him with PTSD.   Pl.'s Ex. 1, ECF No. 54, ¶ 7, at 42.   There is

no medical evidence before the Court that any doctor diagnosed Mr. Espinoza with PTSD.   Mr.

Espinoza has also sought treatment from Dr. Gerald Bryan ("Dr. Bryan"), who diagnosed him with

paranoid personality disorder and major depressive disorder: single episode on June 24, 2011.

Def.'s Ex. 1, ECF No. 38-3, at 9; Def.'s Ex. 8, ECF No. 41, at 8; Pl.'s Ex. 1, ECF No. 54, ¶ 7, at 42.

Dr. Bryan did not diagnose Mr. Espinoza with PTSD.   Def.'s Ex. 8, ECF No. 41, at 8.

Mr. Espinoza began working as a letter carrier for USPS in 2007.   Def.'s Ex. 1,

ECF No. 38-3, at 15; Pl.'s Resp. Alleged Statement Facts ("App'x A"), ECF No. 54, at 23.   Tyron

Taylor ("Mr. Taylor"), an African-American man, began working at the same station as Mr.

Espinoza in a management position on April 5, 2011. Def.'s Ex. 1, ECF No. 38-3, at 23; Pl.'s

App'x A, ECF No. 54, at 27–28.   Regina Boutte ("Ms. Boutte"), an African-American woman,

began working at the same station as Mr. Espinoza in a management position on June 6, 2011.

Def.'s Ex. 1, ECF No. 38-3, at 23, 28; Pl.'s App'x A, ECF No. 54, at 27–28.

Mr. Espinoza claims that "management" was aware of his disability.   Pl.'s Resp.

14.   He believes that Mr. Taylor was aware of his disability because Mr. Taylor had entered into

settlements with other employees in which he acknowledged that he had received confidential

medical information from his wife, who worked at the VA.   Pl.'s Ex. 1, ECF No. 54, ¶¶ 4–5, at 42.

There is no evidence that Mr. Taylor received any information from the VA about Mr. Espinoza.

Mr. Espinoza also claims that his personnel file included documents that said he sought mental

health treatment at the VA.   Id. ¶ 26, at 45.   There is no evidence that Mr. Taylor or Ms. Boutte

read these documents.   Mr. Espinoza does not claim that any documentation stated that he sought treatment for PTSD, paranoid personality disorder, or major depressive disorder: single episode. *Id.* ¶¶ 26–27, at 45.   Mr. Espinoza claims that Ms. Boutte was aware of his disability through Mr. Taylor because he claims they had a personal relationship.   *Id.* ¶ 26, at 45.

On April 9, 2011, Mr. Taylor gave a presentation to the letter carriers at his station. Def.'s Ex. 1, ECF No. 38-3, at 23; Pl.'s App'x A, ECF No. 54, at 28.   During his presentation, Mr. Espinoza questioned Mr. Taylor.   Def.'s Ex. 1, ECF No. 38-3, at 23; Pl.'s App'x A, ECF No. 54, at 28.   Mr. Espinoza claims that, in response to his questions, Mr. Taylor said, "Can you read the words that are coming out of my mouth?" in a derogatory manner.   Pl.'s App'x A, ECF No. 54, at 28.   Mr. Espinoza claims that this statement was discriminatory based on his race and national original because it suggested he didn't understand English and was a quote from a movie in which an African-American actor talked to an Asian actor.   *Id.* at 29.   He also claims it was discriminatory based on his PTSD because it was intended to provoke him to react negatively.   *Id.*

On April 23, 2011, after he had finished his route, Mr. Espinoza saw another letter carrier, Carlos Trancoso ("Mr. Trancoso"), working.   Def.'s Ex. 1, ECF No. 38-3, at 25; Pl.'s App'x A, ECF No. 54, at 30.   Mr. Espinoza was the employee union's shop steward, and one of the duties of the shop steward was to question anything that might violate the union contract, including working off the clock.   Def.'s Ex. 1, ECF No. 38-3, at 25–26; Pl.'s Ex. 1, ECF No. 54, ¶ 18, at 44.   He asked Mr. Taylor and Mr. Trancoso if Mr. Trancoso was working off the clock. Def.'s Ex. 1, ECF No. 38-3, at 26; Pl.'s App'x A, ECF No. 54, at 30.   Mr. Espinoza claims that after Mr. Trancoso replied, Mr. Taylor told Mr. Espinoza, in a derogatory manner, to mind his own business.   Def.'s Ex. 1, ECF No. 38-3, at 26; Pl.'s App'x A, ECF No. 54, at 30.   Mr. Espinoza

claims that this statement discriminated against him based on his disability because it antagonized and disrespected him.   Pl.'s App'x A, ECF No. 54, at 30.

On June 6, 2011, on her first day at the same USPS station as Mr. Espinoza, Ms. Boutte observed him for an extended period of time.   Def.'s Ex. 1, ECF No. 38-3, at 29–30; Pl.'s App'x A, ECF No. 54, at 31.   Mr. Espinoza claims that during that time, she accused him of talking on the phone while working and questioned why he was running late.   Def.'s Ex. 1, ECF No. 38-3, at 30; Pl.'s App'x A, ECF No. 54, at 31.   He further claims that Mr. Taylor told him, in a derogatory manner, to "put a little snap in that walk" or to "put a snap in that walk."   Def.'s Ex. 1, ECF No. 38-3, at 31; Pl.'s App'x A, ECF No. 54, at 32; Pl.'s Resp. 5.   Mr. Espinoza claims that, through this exchange, Ms. Boutte and Mr. Taylor discriminated against him based on his disability because they were trying to antagonize him.   Pl.'s App'x A, ECF No. 54, at 32.   He claims that they discriminated against him based on his race and national origin because an African-American co-worker, Harriston Banks, was not subjected to similar treatment.   Pl.'s App'x A, ECF No. 54, at 32.

Another incident occurred on June 7, 2011, but the parties disagree about its details. The parties agree that the incident began when Mr. Espinoza requested advance leave from Mr. Taylor.   Def.'s App'x A, ECF No. 38-1, at 12; Pl.'s App'x A, ECF No. 54, at 34.   After that, Mr. Taylor gave directions to the letter carriers and specifically directed some instructions to Mr. Espinoza.   Def.'s App'x A, ECF No. 38-1, at 12–13; Pl.'s App'x A, ECF No. 54, at 34.   Mr. Espinoza claims that Mr. Taylor was yelling and insisted that Mr. Espinoza work faster.   Pl.'s App'x A, ECF No. 54, at 34.   The parties agree that Mr. Espinoza and Mr. Taylor then exchanged words about the pace of Mr. Espinoza's work.   *Id.*   Mr. Espinoza asked if he could speak with his union president and Mr. Taylor denied the request and told Mr. Espinoza several times to return to

4

work.  *Id.*   Mr. Espinoza claims that he felt intimidated because Mr. Taylor was bigger than him and "was within ten inches of him."  *Id.* at 35.   Mr. Espinoza further claims that he felt nauseated and nervous and could no longer work.  *Id.*   He requested sick leave forms from Mr. Taylor, but Mr. Taylor denied his request.  *Id.*; Pl.'s Resp. 5.   Mr. Taylor claims that he, as a manager, gave directives to Mr. Espinoza at least five times and that Mr. Espinoza refused to comply with his directives.   Def.'s App'x A, ECF No. 38-1, at 13.

That same day, Mr. Espinoza sought Equal Employment Opportunity ("EEO") counseling.   Def.'s Ex. 1, ECF No. 38-3, at 23; Def.'s Ex. 2, ECF No. 38-4, at 2; Pl.'s Ex. 1, ECF No. 54, at 41.   He claimed that Ms. Boutte and Mr. Taylor discriminated against him based on his "race – Hispanic" and "mental disability (V.A. disability)."   Def.'s Ex. 2, ECF No. 38-4, at 2; Pl.'s Ex. 1, ECF No. 54, at 41.

On July 15, 2011, Ms. Boutte and a "higher level concurring official" issued a "14-Day No Time Off Suspension" for Mr. Espinoza.   Def.'s Ex. 9, ECF No. 38-4, ¶ 6, at 35; Def.'s Ex. 21, ECF No. 38-5; Pl.'s App'x A, ECF No. 54, at 37.   The suspension charged Mr. Espinoza with "Unacceptable Conduct – Failure to Follow Instructions" based on the June 7, 2011, incident.   Def.'s Ex. 21, ECF No. 38-5; Pl.'s App'x A, ECF No. 54, at 37.   The suspension did not involve any time off or loss of pay.   Def.'s Ex. 9, ECF No. 38-4, ¶ 6, at 35; Pl.'s App'x A, ECF No. 54, at 37–38.   Mr. Espinoza successfully disputed the suspension before it became final and USPS expunged the suspension from his record. Def.'s Ex. 9, ECF No. 38-4, ¶ 7, at 35; Pl.'s App'x A, ECF No. 54, at 37–38.   Mr. Espinoza claims that this suspension was discrimination based on his race and national origin and his disability and retaliation for his protected EEO activity.   Pl.'s Resp. 4, 8.

On July 30, 2014, Mr. Espinoza filed this case.   He alleged three causes of action in his Complaint: (1) discrimination based on his Hispanic race and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e et seq.; (2) discrimination based on his disability—PTSD—under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. 791 et seq.; and (3) retaliation for protected EEO activity under Title VII.   Compl. 1 ¶¶ 1–2, 32–43.

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."   Fed. R. Civ. P. 56(c)(1).   "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact."   *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323).   Where, as here, the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."   *Celotex*, 477 U.S. at 325.   While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case."   *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 255).

## ANALYSIS

### 1. Race and National Origin Discrimination Claim

Ms. Brennan argues that Mr. Espinoza cannot establish a prima facie case of race and national origin discrimination under Title VII because he has not suffered an adverse employment action. Def.'s Mot. Summ. J. 5. The Court agrees.

When a plaintiff brings a Title VII discrimination claim without direct evidence of discrimination, a court must apply the "*McDonnell Douglas* burden-shifting framework."

*Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 267 (5th Cir. 2015) (citing *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)).   Under that framework, a plaintiff:

> must first demonstrate a prima facie case of discrimination; the defendant then
> must articulate a legitimate, non-discriminatory reason for its decision to terminate
> [or take some other adverse employment action against] the plaintiff; and, if the
> defendant meets its burden of production, the plaintiff must then offer sufficient
> evidence to create a genuine issue of material fact that either (1) the employer's
> reason is a pretext, or (2) that the employer's reason, while true, is only one of the
> reasons for its conduct, and another "motivating factor" is the plaintiff's protected
> characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007).

To establish a prima facie case of discrimination based on race or national origin, a

plaintiff "must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the

position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated

less favorably because of his membership in that protected class than were other similarly situated

employees who were not members of the protected class, under nearly identical circumstances."

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).   For Title VII discrimination

claims, the Fifth Circuit has limited adverse employment actions to "include only ultimate

employment decisions such as hiring, granting leave, discharging, promoting, or compensating."

*McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).   To qualify as an adverse

employment action, the decision must affect job duties, compensation, or benefits.   *Thompson v.*

*City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).   In general, being placed on paid leave does not

constitute an adverse employment action.   *McCoy*, 492 F.3d at 559.

Here, the parties do not dispute that Mr. Espinoza was issued a fourteen-day

suspension with pay and no time off.   Pl.'s Resp. 4; Pl.'s App'x A, ECF No. 54, at 37; Def.'s

App'x A, ECF No. 38-1 at 14.   Further, the parties agree that Mr. Espinoza successfully disputed

the suspension before it became final and his employer expunged the suspension from his record.

Pl.'s App'x A, ECF No. 54, at 37–38; Def.'s App'x A, ECF No. 38-1 at 14.   Mr. Espinoza's paid

suspension was not an adverse employment action because it did not affect his job duties,

compensation, or benefits.   Moreover, the suspension was not an ultimate decision because Mr.

Espinoza successfully challenged it and it never went into effect.

>       Mr. Espinoza also claims that his supervisor ridiculed and embarrassed him the

following four times:

> (1) on April 9, 2011, Mr. Taylor asked him "can you read the words that are coming
> out of my mouth,["] in a derogatory manner;" [sic]
> (2) on April 23, 2011, Mr. Taylor told Plaintiff to mind his own business, in a
> derogatory manner;
> (3) on June 6, 2011, Ms. Boutte observed Plaintiff for an extended period of time,
> questioned whether he was talking on the phone, questioned why he was running
> late[,] and Mr. Taylor told him to "put a snap in that walk," in a derogatory manner;
> [and]
> (4) on June 7, Mr. Taylor yelled at him in a derogatory manner and would not give
> him forms to request sick leave.

Pl.'s Resp. 5.   Mr. Espinoza claims that these incidents constitute adverse employment actions.

*Id.*   The Court disagrees.   These incidents, if true, did not affect Mr. Espinoza's job duties,

compensation, or benefits.   Further, "allegations of unpleasant work meetings, verbal reprimands,

improper work requests, and unfair treatment do not constitute actionable adverse employment

actions as discrimination."   *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008).

>       Neither Mr. Espinoza's rescinded suspension nor the incidents in which his

supervisor allegedly embarrassed him constitute adverse employment actions.   Because Mr.

Espinoza has not demonstrated that he was the subject of an adverse employment action, he has

not established a prima facie case of race and national origin discrimination.   The Court need not

address the second half of the burden-shifting framework because Mr. Espinoza cannot meet his

initial burden to prove a prima facie case of race and national origin discrimination.   Therefore,

the Court will grant summary judgment on Mr. Espinoza's race and national origin discrimination claim.

## 2. Disability Discrimination Claim

Mr. Espinoza's second cause of action alleges discrimination and hostile work environment based on his PTSD.[2]   Compl. ¶¶ 35–40.   He claims that Ms. Brennan, through her employees, harassed him, held him to stricter standards of performance, and denied him the benefits of employment given to other employees.   *Id.* ¶ 38.

Ms. Brennan argues that Mr. Espinoza is not suffering from a disability and therefore his disability discrimination claim fails.   She has provided evidence that Mr. Espinoza's doctor, Dr. Bryan, did not diagnose him with PTSD, Def.'s Ex. 8, ECF No. 41, at 8, and she argues that Mr. Espinoza has not provided any evidence that he was diagnosed with PTSD.   Def.'s Mot. Summ. J. 8.   The Court agrees.

The *McDonnell Douglas* burden-shifting framework articulated above for Title VII discrimination claims also applies to discrimination claims under the Rehabilitation Act where there is no direct evidence of discrimination.   *Handy v. Brownlee*, 118 F. App'x 850, 854 (5th Cir. 2004).   Thus, as a threshold matter, a plaintiff bringing a disability discrimination or hostile work environment claim under the Rehabilitation Act must demonstrate a prima facie case of disability-based discrimination or harassment, respectively.   *Id.*   Because, under the

---

[2] Mr. Espinoza's Complaint contains three causes of action.   The second cause of action, titled "COUNT TWO DISABILITY DISCRIMINATION (Post-Traumatic Stress Disorder – 'PTSD')," states that Ms. Brennan's actions "constituted disability discrimination against Plaintiff in the creation and condonation of a disability bias and a hostile work atmosphere." Compl. 8.   In his response to Ms. Brennan's Motion, Mr. Espinoza argues that he has established a prima facie case of hostile work environment.   He claims both that the harassment was based on his disability and his race and national origin.   Pl. Resp. 12–14.   Mr. Espinoza is not pro se and is not entitled to the reduced pleading standards afforded to pro se parties.   *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that pro se filings, however inartfully pleaded should be held to "less stringent standards than formal pleadings drafted by lawyers."). Because Mr. Espinoza's second cause of action alleges disability discrimination in various forms, the Court will examine whether he can establish a prima facie case of hostile work environment based on his disability.   However, because Mr. Espinoza does not claim in his Complaint that Ms. Brennan subjected him to a hostile work environment based on his race and national origin, the Court will not examine that particular claim.

Rehabilitation Act, the requirements to establish a prima facie case of disability discrimination and hostile work environment differ slightly, the Court will examine each separately.

### a. Discrimination

"To establish a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff must prove (1) he is an individual with a disability; (2) who is otherwise qualified for the position sought; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that he was discriminated against solely by reason of her or his disability." *Washburn v. Harvey*, 504 F.3d 505, 508–09 (5th Cir. 2007) (internal quotation marks and alterations omitted). A disability, under the Rehabilitation Act, is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C § 12102. A major life activity includes, for example, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* A major life activity also includes "the operation of a major bodily function." *Id.*

Here, Ms. Brennan has shown that there is an absence of evidence that Mr. Espinoza has a disability. Mr. Espinoza claims that he has PTSD. He claims variously that Dr. Bryan diagnosed him with PTSD, Pl.'s Resp. 6, and that doctors at the VA diagnosed him with PTSD, Pl.'s Ex. 1, ECF No. 54, ¶ 7, at 42. However, Ms. Brennan has provided evidence, including medical records, that Dr. Bryan did not diagnose Mr. Espinoza with PTSD. Def.'s App'x A, ECF No. 38-1, at 4; Def.'s Ex. 8, ECF No. 41, at 7.

To support his claim that he has PTSD, Mr. Espinoza provides only an affidavit stating, "the VA diagnosed me with the PTSD symptoms." Pl.'s Ex. 1, ECF No. 54, ¶ 7, at 42. Some district courts have required plaintiffs to support their disability discrimination claims with

medical evidence that they have a disability.   *See e.g. Clark v. Boyd Tunica, Inc.*, No.

314CV00204MPMJMV, 2016 WL 853529, at *5 (N.D. Miss. Mar. 1, 2016) (finding that the

plaintiff's single-page medical form stating that she had fractured her ankle was insufficient to

show that she had a disability and noting that the record lacked "any substantive medical records");

*McGarthy v. Ridge*, No. CIV.A. 302CV1111P, 2004 WL 1542161, at *3 (N.D. Tex. July 7, 2004)

("McGarthy does not sustain her burden of proof in regard to her alleged disability because she has

not provided medical evidence that would justify its classification as a 'physical impairment.'");

*Boren v. Wolverine Tube, Inc.*, 966 F. Supp. 457, 462 (N.D. Miss. 1997) ("[A] person alleging a

disability protected by the ADA has a burden of establishing with medical evidence the existence

of the alleged disability." (internal quotation marks omitted)); *Anderson v. Nat'l Grid, PLC*, 93 F.

Supp. 3d 120, 136 (E.D.N.Y. 2015) ("Courts in the Second Circuit have consistently held that

when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which

he claims he is subject due to his condition, he cannot establish that he is disabled within the

meaning of the ADA." (internal quotation marks omitted)).   Mr. Espinoza does not provide any

medical evidence that he was diagnosed with PTSD, and his affidavit may not suffice to show that

he has PTSD.

    In any case, evidence that a plaintiff has an impairment is not sufficient.   Rather, a

plaintiff must show that the impairment substantially limits a major life activity.[3]   *See Ball v.

LeBlanc*, 792 F.3d 584, 597 (5th Cir. 2015) (holding that the plaintiffs did not show that they had

disabilities because they did not provide evidence that their medical conditions limited any major

---

[3] The ADA Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009, broadened the
definition of "disability."   Pub.L. No. 110–325, 122 Stat. 3553 (2008).   The ADAAA overruled case law that an
impairment substantially limits a major life activity only if it "prevents or severely restricts an individual from doing
activities that are of central importance to most people's daily lives."   *Id.*   Although the ADAAA made it easier to
prove that an impairment limits a major life activity, it did not eliminate that requirement altogether.   *See* 42 U.S.C
§ 12102 ("The term 'disability' means, with respect to an individual . . . a physical or mental impairment *that
substantially limits one or more major life activities* of such individual." (emphasis added)).

life activity, including the operation of a major bodily function).   The determination of "whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).   In fact, the threshold to show that PTSD substantially limits a major life activity is particularly low.   *See* 29 C.F.R. § 1630.2 (j)(3)(iii) ("[I]t should easily be concluded that post-traumatic stress disorder . . . substantially limit[s] brain function.").   However, Mr. Espinoza does not meet this low threshold because he cites no evidence whatsoever to show that his disorder substantially limits his brain function or any other major life activity.

Mr. Espinoza reiterates that his discrimination claim is based on his purported PTSD, not any other disorder, when he states the following in his Complaint and Response:

(1) "TEODORO ESPINOZA . . . has been discriminated against by Defendant on the basis of race/national origin (Hispanic), retaliation, and disability (Post-Traumatic Stress Disorder – 'PTSD')," Complaint ¶ 2;

(2) "TEODORO ESPINOZA alleges that he was discriminated against because of race/national origin (Hispanic), retaliation, and disability (Post- Traumatic Stress Disorder – 'PTSD')," *id.* ¶ 9;

(3) "Plaintiff was discrimination [sic] based on race/national origin (Hispanic), retaliation, and disability (Post-Traumatic Stress Disorder – 'PTSD')," *id.* ¶ 11;

(4) "COUNT TWO DISABILITY DISCRIMINATION (Post-Traumatic Stress Disorder – 'PTSD')," *id.* at 8;

(5) "Plaintiff was discriminated against on the basis of his Race/National Origin (Hispanic) and disability (Post Traumatic Stress Disorder-PTSD), " Pl.'s Resp. 1;

(6) "Plaintiff established a prima facie case of disability discrimination because of his disability[,] PTSD," *id.* at 4; and

13

(7) "It is undisputed that Plaintiff has a record of an impairment (PTSD) and was regarded as

having such impairment by management.   His diability [sic] (PTSD) clearly affects

[sic] substantially limits a major life activity[,] which is the ability to work," *id.* at 6.

Even if Mr. Espinoza instead intended to assert a claim for disability discrimination

based on his paranoid personality disorder and major depressive disorder: single episode, he has

nevertheless failed to provide any evidence that those disorders substantially limit a major life

activity.   As with PTSD, the threshold to prove that major depressive disorder affects a major life

activity is low.   *See* 29 C.F.R. § 1630.2 (j)(3)(iii) ("[I]t should easily be concluded that major

depressive disorder . . . substantially limit[s] brain function.").   Again, Mr. Espinoza does not pass

that low threshold because he does not provide any evidence that his disorder affects a major life

activity.   Mr. Espinoza asserts only that "[t]hese disorders . . . have caused Plaintiff difficulty in

his interpersonal relationships, which has also affected his work relationships."   Pl.'s Resp. 6.

Mr. Espinoza does not cite any evidence to support this conclusory assertion.   Because Ms.

Brennan has shown an absence of evidence supporting Mr. Espinoza's disability discrimination

claim, Mr. Espinoza, "must identify specific evidence in the record and articulate [how] that

evidence supports [his] claim."   *See Duffie*, 600 F.3d at 371 (explaining the nonmoving party's

burden in opposing summary judgment).   "This burden is not satisfied . . . by 'conclusory

allegations,' [or] by 'unsubstantiated assertions.'"   *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir. 1994) (en banc)).   Further, "Rule 56 does not impose upon the district court a

duty to sift through the record in search of evidence to support a party's opposition to summary

judgment."   *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).   Because Mr.

Espinoza has not provided any evidence showing that his PTSD, paranoid personality disorder,

and major depressive disorder: single episode affect a major life activity, he has not met his burden to prove that he has a disability.

Alternatively, a plaintiff may satisfy the first prong of the prima facie case—that he has a disability—by proving that he has a record of impairment or that his employer regarded him as having an impairment.   42 U.S.C. § 12102(1)(C).   To prove that he was regarded as having a disability, the plaintiff need not show that his impairment limited or was perceived to limit a major life activity.   *Id.* § 12102(3)(A).   Mr. Espinoza argues that his employer had a record of his impairment and regarded him as having an impairment, but he has provided no more than bare assertions to support those claims.   Pl.'s Resp. 6.   Mr. Espinoza did not cite to any evidence in support of his assertions.   *Id.*   The Court has no duty to search the record for evidence in support of a party's opposition to summary judgment.   *Ragas*, 136 F.3d at 458.   Nevertheless, the Court will examine Mr. Espinoza's arguments and evidence in detail below.

Ms. Brennan argues that Mr. Espinoza cannot establish that his supervisor was aware of his disability.   In his "Responses to [Ms. Brennan's] Alleged Statement of Facts," Mr. Espinoza disputes that argument, again without citing any evidence.   Pl.'s App'x A, ECF No. 54, at 18.   He responds that his supervisor, Mr. Taylor, had entered into settlements in which Mr. Taylor acknowledged that he had received confidential medical information from his wife, who worked at the VA.   *Id.*   However, Mr. Espinoza does not claim that he was involved in these settlements.   *Id.*   He later claims that he "believes" Mr. Taylor was aware of his PTSD.   *Id.* at 19.

The only evidence Mr. Espinoza provides in opposition to Ms. Brennan's Motion is his affidavit.   In it, Mr. Espinoza claims that Mr. Taylor received confidential medical information from his wife, who worked at the VA.   Pl.'s Ex. 1, ECF No. 54, ¶¶ 4–5, at 42.   He

does not provide evidence that Mr. Taylor received any information from the VA about Mr. Espinoza.   He also claims in his affidavit that "Defendant has my document in my personal file and from the VA stated [sic] what department he [sic] was going to seek medical attention (Mental Health).   Ms. Boutte was aware of my disability through Mr. Taylor, and he and Ms. Butte [sic] had a personal relationship." *Id.* ¶ 26, at 45.

Mr. Espinoza's affidavit is insufficient for three reasons.   First, it contains conclusory facts without evidence to substantiate them.   "[U]nsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (internal quotation marks omitted).   Second, and relatedly, Mr. Espinoza does not show that his assertions are based on personal knowledge.   Rule 56 requires that affidavits used to support or oppose a motion for summary judgment must be based on personal knowledge.   Fed. R. Civ. P. 56.   "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007) (internal quotation marks omitted).   Mr. Espinoza's affidavit does not contain any facts that show that he has personal knowledge of the settlements that he claims revealed that Mr. Taylor received confidential information from his wife at the VA. Nor does the affidavit contain any facts that show that Mr. Espinoza has personal knowledge that Mr. Taylor informed Ms. Boutte of Mr. Espinoza's disability.   Third, even if Mr. Espinoza's statements were admissible, they would show only that (a) Mr. Taylor was aware of some medical records of employees other than Mr. Espinoza who were involved in specific settlements, and that (b) Mr. Espinoza's personnel file showed that he sought mental health treatment.   These facts, if

true, would not be sufficient to show that Mr. Espinoza has a record of having PTSD or that his

employer regarded him as having PTSD.

Further, when asked in a deposition to explain the basis of his claims, Mr. Espinoza

testified:

> The union filed a grievance against Mr. Taylor several times due to the fact that he
> had his—his wife worked at the VA.   And there was a settlement that Mr. Taylor
> would not—that Mr. Taylor, where he said that he would not use or ask his wife to
> give him anymore [sic] information on veterans going to the VA.

Def.'s Ex. 1, ECF No. 38-3, at 33.   This testimony prompted the following exchange:

> Q.   Okay.
>
> A.   That's why I took it, understood that Mr. Taylor knew what was happening
> with me.
>
> Q.   Okay. Do you have any other evidence to support your belief that Mr. Taylor
> was aware you had a disability?
>
> A.   Just the previous settlements of grievances by Branch 505.
>
> Q.   Okay. So in regards to your specific documentation, you have no evidence to
> show he was aware of it?
>
> A.   The only thing is that he and the supervisors are in charge of my
> documentation.
>
> Q.   Okay.
>
> A.   And that's where it would show that I was seeking treatment.
>
> Q.   I understand—I understand your testimony to be that managers are in charge
> of your documentation.   But I want to know what evidence you have to
> specifically prove that Mr. Taylor saw that documentation.
>
> A.   And I'd like to clear that.   That they're in charge of my documentation and
> see what department or treatment I go for.
>
> Q.   Okay.   So any other evidence?
>
> A.   No.
>
> Q.   Okay.   What evidence do you have that Ms. Boutte was aware of your
> disability?

A.    Nothing.   No.   It—the only conclusion is that them [sic] both worked together.

*Id.*   Mr. Espinoza's deposition testimony clarifies that he does not have evidence that Mr. Taylor knew about his PTSD or that he had a record of having PTSD.   Mr. Espinoza does not provide any evidence to the contrary.[4]

In addition, Mr. Espinoza does not provide any evidence that he was discriminated against because of his disability.   The third prong of a prima facie case alleging disability discrimination requires a plaintiff to show that he was discriminated against "solely by reason of . . . his disability."   *Washburn*, 504 F.3d at 508 (internal quotation marks omitted).   Mr. Espinoza claims that he was "held to stricter standards of performance," "denied benefits of employment accorded other employees," and "treated dissimilarly from other employees."   Compl. ¶¶ 38–39. To show that his disability caused the discrimination, Mr. Espinoza includes the conclusory statement in his affidavit, "I demonstrated that the harassment was based on national origin and my disability," Pl.'s Ex. 1, ECF No. 54, ¶ 37, at 46, but he does not support this conclusion with any evidence.   Thus, Mr. Espinoza does not provide any non-conclusory evidence that his purported disability was a cause, let alone the sole cause, of his discrimination.   Therefore, Mr. Espinoza has not proved the third prong of a prima facie case of disability discrimination.   Because Mr. Espinoza has not proved that he has a disability or that his disability was the sole reason for his discrimination, he has not established a prima facie case of disability discrimination, and the Court will grant summary judgment on that claim.

---

[4] As explained above, Mr. Espinoza's complaint clearly alleged discrimination based on his PTSD and not any other disorder.   However, if Mr. Espinoza intended to claim that he was discriminated against based on his paranoid personality disorder and major depressive disorder: single episode, he similarly has not provided sufficient evidence to show that he had a record of having, or that his employer regarded him as having, those disorders.

### b. Hostile Work Environment

To establish a prima facie case of hostile work environment under the Rehabilitation Act, a plaintiff must prove (1) she belongs to a protected group, (2) she was harassed, (3) the harassment was based solely on her disability, (4) the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506 & n.8 (5th Cir. 2002). Further, the harassment "must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001) (internal quotation marks omitted). The standard to establish workplace harassment in the Fifth Circuit is high. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003)

Mr. Espinoza claims that he was harassed because of his PTSD. However, as explained above, he has not provided evidence that he was diagnosed with PTSD or that the disorder affected a major life activity. Therefore, Mr. Espinoza has not shown that he belongs to a relevant protected group and, as a result, he fails to establish a prima facie case. *See Ortega v. Chertoff*, 600 F. Supp. 2d 828, 839 (W.D. Tex. 2008) ("Because [the p]laintiff has not produced any specific evidence showing that he is substantially limited in a major life activity, [the p]laintiff has failed to establish that he belongs to the relevant protected group of persons with a disability. Consequently, [the p]laintiff fails to establish a prima facie claim of hostile work environment.").

Mr. Espinoza's prima facie case further fails because, as explained above, he has not provided any evidence that his PTSD was a cause, let alone the sole cause, of his harassment. To establish a prima facie case of hostile work environment under the Rehabilitation Act, a plaintiff must show "that the harassment complained of was based *solely* on her disability or

disabilities." *Soledad*, 304 F.3d at 506 (internal quotation marks omitted) (emphasis in original). Mr. Espinoza has not met that burden.

Moreover, Mr. Espinoza cannot show that his treatment was pervasive or severe. To determine whether a work environment is abusive, courts consider evidence such as "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). The Fifth Circuit has explicitly declined to "elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998).

Mr. Espinoza claims that the following incidents created a hostile work environment:

> (1) on April 9, 2011, Mr. Taylor asked him "can you read the words that are coming out of my mouth,["] in a derogatory manner;" [sic]
> (2) on April 23, 2011, Mr. Taylor told Plaintiff to mind his own business, in a derogatory manner;
> (3) on June 6, 2011, Ms. Boutte observed Plaintiff for an extended period of time, questioned whether he was talking on the phone, questioned why he was running late[,] and Mr. Taylor told him to "put a snap in that walk," in a derogatory manner; [and]
> (4) on June 7, Mr. Taylor yelled at him in a derogatory manner and would not give him forms to request sick leave.

Pl.'s Resp. 5. These comments are the type of harsh words that the Fifth Circuit in *McConathy* found to be not severe enough to create a hostile work environment. *See McConathy*, 131 F.3d at 564 (finding that a supervisor's comments about the plaintiff's slow recovery from surgery and chronic medical issues were not severe); *see also Mackey v. Children's Med. Ctr. of Dallas*, No. CIV.A. 3:05-CV-043-L, 2006 WL 2713788, at *19 (N.D. Tex. Sept. 22, 2006) (finding that comments that the plaintiff was "slow" "a MHMR case" "heavily medicated" and "dragging" were

not severe or pervasive).   Because Mr. Espinoza cannot show that his harassment was pervasive or severe, he cannot show that it altered a term, condition, or privilege of employment.

Further, the Fifth Circuit has explained in cases involving sex-based hostile work environment claims under Title VII that employees are not protected from "hostile conduct that is not based on their protected status." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996); *see also Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998) ("A plaintiff, however, must show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex.").   The same standards apply to hostile work environment under the Rehabilitation Act and Title VII, except the Rehabilitation Act imposes a higher standard for the causation element of the prima facie case.   *Soledad*, 304 F.3d at 506 & n.8. Therefore, for disability-based hostile work environment claims, an employee is not protected from hostile conduct that is not connected to his disability.   *Melson v. Chetofield*, No. CIV.A.08-3683, 2009 WL 537457, at *5 (E.D. La. Mar. 4, 2009) ("[C]omments that are not implicitly or explicitly connected to plaintiff's disability are not actionable.").   The derogatory comments that Mr. Espinoza claims created a hostile work environment have no apparent connection, either explicit or implicit, to his PTSD.   Therefore, they are not actionable.

Mr. Espinoza has not provided evidence to show that he has a disability, his disability was the sole cause of his harassment, or that his harassment was pervasive or severe enough to alter a term, condition, or privilege of his employment.   As a result, Mr. Espinoza cannot establish a prima facie case of a disability-based hostile work environment, and the Court will grant summary judgment on that claim.

### 3. Retaliation Claim

Ms. Brennan argues that the Court should grant summary judgment on Mr. Espinoza's claim that he suffered retaliation for engaging in protected activity because he did not experience an adverse employment action and cannot establish a causal connection between his protected activity and the alleged retaliation.   Def.'s Mot. Summ J. 9–10.   The Court agrees.

When a plaintiff brings a Title VII retaliation claim without direct evidence, a court must, as with discrimination claims, apply the *McDonnell Douglas* burden-shifting framework. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).   Under that framework as applied to retaliation claims:

> (1) [F]irst, the employee must demonstrate a prima facie case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and (3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation.

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).   To establish a prima facie case of retaliation under Title VII, a plaintiff must show "'(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'"   *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)).   Protected activity occurs when an employee complains to management about an unlawful employment practice or warns management that he will file a complaint if such practice does not stop.   *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (concluding that the plaintiff did not engage in protected activity because she did neither of these things).

Here, the parties do not dispute that Mr. Espinoza engaged in protected activity when he sought EEO counseling on June 7, 2011.   Def.'s Mot. Summ J. 8; Def.'s App'x A,

ECF No. 38-1, at 1; Pl.'s Ex. 1, ECF No. 54, ¶ 1, at 41.   Therefore, the Court will examine only whether Mr. Espinoza suffered an adverse employment action and whether a causal link existed between the protected activity and the adverse action.

### a. Adverse Employment Action

For Title VII retaliation claims, adverse employment actions are not limited to "ultimate employment decisions." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).   However, protection against retaliation under Title VII extends only to employer actions that are "materially adverse to a reasonable employee or applicant." *Id.* The Supreme Court has clarified that an action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted).   An adverse employment action in the retaliation context, unlike that in a discrimination claim, need not affect the terms and conditions of employment. *Id.* at 64.

Mr. Espinoza claims that his paid fourteen-day suspension, which never became final and which was expunged from his record, constituted an adverse employment action. Pl.'s Resp. 8. In *Burlington*, the Supreme Court found that a thirty-seven-day suspension without pay was materially adverse to the plaintiff. *Burlington*, 548 U.S. at 72–73.   Although the plaintiff was ultimately reinstated and paid backpay, the Court reasoned that the loss of income for one month and the uncertainty of the future of the plaintiff's employment might have dissuaded a reasonable employee from bringing a discrimination claim. *Id.* Further, the Fifth Circuit has recognized that paid administrative leave could, in some circumstances, constitute an adverse employment action for retaliation claims. *McCoy v. City of Shreveport*, 492 F.3d 551, 561 (5th Cir. 2007) (stating that it was a "close question" whether the plaintiff's paid administrative leave was an adverse employment action and granting summary judgment on other grounds).   On the

other hand, courts have found in some instances that employer investigations of plaintiffs did not constitute adverse employment actions for retaliation claims. *See, e.g.*, *Magiera v. City of Dallas*, 389 F. App'x 433, 437 (5th Cir. 2010) (finding that an internal affairs investigation into complaints against the plaintiff was not an adverse employment action); *Escalante v. Holder*, No. EP-09-CV-368-KC, 2011 WL 1528472, at *12 (W.D. Tex. Apr. 20, 2011) ("[A] plaintiff suffers no adverse employment action where an employer conducts an investigation and transfers the plaintiff to a different unit.").

Here, the harm to Mr. Espinoza is far less than what the plaintiff faced in *Burlington*. At all times Mr. Espinoza knew that he would be paid and would keep his employment. In some cases a paper suspension could stigmatize the employee and harm his advancement opportunities in a way that would dissuade a reasonable person from bringing a discrimination claim. *See McCoy*, 492 F.3d at 561 (recognizing that administrative leave may stigmatize an employee and cause him emotional distress). However, Mr. Espinoza does not argue that such a suspension existed here. *See* Pl.'s Resp. 8–9 (explaining that an action is adverse if it would dissuade a reasonable person from making a discrimination claim, but failing to make any claims about his suspension). He provides no evidence that the paper suspension, which was never finalized, was materially adverse to a reasonable employee. Therefore, Mr. Espinoza has not established a prima facie case of retaliation.

### b. Causal Link

Mr. Espinoza also has not shown that a causal link existed between the purported adverse employment action and his protected activity. "[T]emporal proximity between the protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d

940, 948 (5th Cir. 2015).    Nevertheless, a protected activity cannot cause retaliation if the decision maker is not aware of it.    *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) ("The district court correctly held that [the defendant] could not retaliate against [the plaintiff] for making sexual harassment complaints, because it did not know she had engaged in protected activity."); *see also Luna v. Lockheed Martin Corp.*, 54 F. App'x 404 (5th Cir. 2002) ("If the decision maker was not aware of any protected activity, there can be no causal connection between the protected activity and any adverse employment action taken by that decision maker.").    Mr. Espinoza does not argue that anyone involved with issuing his suspension knew about his EEO counseling.    *See* Pl.'s Resp. 9 (arguing only that the close timing between the EEO counseling and the suspension established a causal connection).    Therefore, Mr. Espinoza has not shown that his protected activity caused his suspension.

Because Mr. Espinoza has not demonstrated either that he was the subject of an adverse employment action or that a causal link existed between his protected activity and the action, he has not established a prima facie case of retaliation.    The Court need not address the second half of the burden-shifting framework because Mr. Espinoza cannot meet his initial burden to prove a prima facie case of retaliation.    Thus, the Court will grant summary judgment in favor of Ms. Brennan on Mr. Espinoza's retaliation claim.

## CONCLUSION

Mr. Espinoza claims that Ms. Brennan, through her employees at USPS, discriminated against him based on his race and national origin, discriminated against him based on his disability and retaliated against him for his protected activity by issuing a fourteen-day suspension and mistreating him on four occasions beginning on April 9, 2011.    To succeed on each claim, Mr. Espinoza must first make a prima facie case of discrimination or retaliation.    Ms.

Brennan has pointed out an absence of evidence to establish a prima facie case on each of Mr. Espinoza's claims, and Mr. Espinoza has not provided sufficient evidence to support them. Namely, Mr. Espinoza cannot establish a prima facie case of race and national origin discrimination because there is no evidence that he suffered an adverse employment action. Mr. Espinoza cannot establish a prima facie case of disability discrimination because he has not shown that he has a disability or that the disability was the sole cause of his discriminatory treatment. To the extent that Mr. Espinoza's disability discrimination claim alleges that Ms. Brennan created a hostile work environment, that claim also fails because he has not shown that he has a disability, that his treatment was severe or pervasive, or that his disability was the sole cause of his treatment. Mr. Espinoza cannot establish a prima facie case of retaliation because there is no evidence that he suffered an adverse employment action or that his protected activity caused his treatment. Because Mr. Espinoza has not shown sufficient evidence to support a prima facie case on any of his claims, the Court will grant summary judgment on all of them.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Megan J. Brennan's "Motion for Summary Judgment" filed on August 11, 2016, is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff Teodoro Espinoza's claims against Defendant Megan J. Brennan are **DISMISSED WITH PREJUDICE**.

**SIGNED** this **7th** day of **December 2016**.

_____
**DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE**